**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Dianne Ewing,                                   :            Case No. 3:12-CV-743
                                                :
          Plaintiff,                            :
                                                :
v.                                              :
                                                :
Lucas County Department of Job,                 :            **MEMORANDUM AND**
and Family Services                             :            **ORDER**
          Defendant,                            :

## I. INTRODUCTION

Plaintiff Dianne Ewing ("Plaintiff") seeks money damages, reinstatement, and liquidated

damages resulting from an alleged unlawful termination of employment (Docket No. 19). Plaintiff

seeks relief for alleged violations of due process, equal protection, and Title VII of the Civil Rights

Act of 1964 (42 U.S.C. § 2000e), as well as state law defamation and invasion of privacy claims

(Docket No. 19). Pending is Defendant Lucas County Department of Job and Family Services'

("Defendant" or "JFS") Second Motion for Judgment on the Pleadings, filed September 24, 2012

(Docket No. 27), Plaintiff's Opposition, filed October 22, 2012 (Docket No. 31), and Defendant's

Reply, filed November 25, 2012 (Docket No. 35). For the reasons that follow, Defendant's Motion for

Partial Judgment on the Pleadings is granted.

## II. FACTS

Plaintiff is a Caucasian individual and citizen of the United States and a resident of the City of Toledo (Docket No. 19, p. 2 of 9; No. 27, p. 5 of 29). She was employed by Defendant as an Eligibility Specialist 2 ("Eligibility Specialist") until her discharge on or about April 1, 2011 (Docket No. 19, p. 2 of 9). Defendant is a department within the governmental structure of Lucas County, Ohio, under the authority of the Lucas County Board of County Commissioners (Docket No. 19, p. 2 of 9). Defendant provides services to families throughout Lucas County including temporary cash assistance, food stamps, subsidized child care, adult protection, disability assistance and prevention, retention and contingency services, and medical assistance (Docket No. 19, p. 2 of 9). Plaintiff alleges that Defendant accused her of dishonesty, failure of good behavior, and malfeasance and subsequently terminated her employment (Docket No. 19, p. 3 of 9). Plaintiff also alleges that Defendant failed to conduct an adequate investigation into the charges against her prior to terminating her employment (Docket No. 19, p. 3 of 9). As a result of her termination, Plaintiff claims she has suffered the loss of back wages, retirement and pension benefits, and has suffered great mental and emotional stress, anxiety, humiliation, and embarrassment (Docket No. 19, p. 3 of 9).

## III. PROCEDURAL HISTORY

On May 4, 2011, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission ("EEOC"), charge number 22A-2011-02292C (Docket No. 19, Attachment 1). On March 13, 2012, the District Director of the EEOC notified Plaintiff of her right to file suit in an appropriate federal district court within ninety (90) days (Docket No. 19, Attachment 2). On March 27, 2012, Plaintiff filed a Complaint in the United States District Court for the Northern District of Ohio, Western Division, alleging unlawful termination and

seeking money damages, reinstatement, and liquidated damages (Docket No. 1). Plaintiff's Complaint also set forth state law claims alleging defamation and invasion of privacy (Docket No. 1). On June 21, 2012, both parties consented to the jurisdiction of the undersigned Magistrate in accordance with the provisions of 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, agreeing to have the undersigned Magistrate conduct any and all further proceedings in the case, including trial and the entry of final judgment (Docket No. 13). Defendant filed its Answer on July 3, 2012, denying Plaintiff's allegations and setting forth multiple affirmative defenses (Docket No. 15).

On July 6, 2012, Defendant filed its First Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c), requesting dismissal of Plaintiff's entire Complaint (Docket No. 16). Plaintiff filed her Opposition on August 2, 2012 (Docket No. 18). On that same date, Plaintiff filed her First Amended Complaint (Docket No. 19).[1] Defendant filed its Answer to the First Amended Complaint on September 22, 2012 (Docket No. 25). Two days later, Defendant filed its Second Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c), requesting dismissal of Plaintiff's entire Amended Complaint (Docket No. 27). Plaintiff filed her Opposition to Defendant's Second Motion on October 22, 2012 (Docket No. 31). Defendant filed its Reply on November 12, 2012 (Docket No. 35).

## IV. STANDARD OF REVIEW

This Court set forth the standard of review for a motion under FED. R. CIV. P. 12(c) in *EEOC v. Faurecia Exhaust Sys.*, 601 F.Supp.2d 971 (N.D. Ohio 2008):

> Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *EEOC v. J.H. Routh Packing Co.*, 246 F.3d

---

[1] It should be noted that Plaintiff's filing of her First Amended Complaint rendered her original Motion for Judgment on the Pleadings moot.

3

850, 851 (6th Cir. 2001) (*citing Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (*quoting Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

601 F.Supp.2d at 973 (internal quotations omitted).

## V. ANALYSIS

### A.   DEFENDANT'S ALLEGATIONS

In its Memorandum in Support for its Second Motion for Judgment on the Pleadings, Defendant alleges that it is entitled to judgment as a matter of law because Plaintiff's First Amended Complaint fails to properly assert: (1) a due process or equal protection cause of action under 42 U.S.C. § 1983; (2) a claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (3) a claim pursuant to O.R.C. § 4112.02(A) (Docket No. 27, p. 2 of 9). Defendant also alleges that it is entitled to judgment as a matter of law because: (1) Plaintiff's employment was actually terminated by the Lucas County Board of County Commissioners ("BCC"), a non-party; (2) Defendant is immune from liability for the state law claims of defamation and invasion of privacy pursuant to O.R.C. § 2744.02; (3) the state law defamation claim is barred by privilege; and (4) the state law invasion of privacy claim is barred because Defendant did not publicize the matter and Plaintiff's termination was a matter of legitimate public concern (Docket No. 27, p. 2 of 9).

### B.   PLAINTIFF'S RESPONSE

4

In her Opposition, Plaintiff asserts she has fulfilled her obligation to set forth sufficient factual allegations which, when taken as true, establish the essential elements of her claims (Docket No. 31, pp. 1-2 of 15). Specifically, Plaintiff alleges: (1) it was Defendant, not the BCC, that terminated her employment; (2) her § 1983 claims have sufficient factual content to support claims that are plausible; and (3) her due process, equal protection, defamation, and invasion of privacy claims are all properly alleged (Docket No. 31).

## C.  DISCUSSION

### 1.  PROPER PLEADINGS

Under FED. R. CIV. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Traditionally, a complaint needed only to "give the defendant fair notice of what the plaintiff's claim [was] and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under *Conley*, "a complaint should not be dismissed for failure to state a claim unless it appear[ed] *beyond doubt* that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 46-47 (emphasis added).

In 2007, the Supreme Court altered this traditional construction in *Bell Atlantic Corp. v. Twombly*, (550 U.S. 544 (2007)). In *Twombly*, the Court held that, while a complaint does not need to contain *detailed* factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. The Court specifically denied requiring a heightened fact pleading; rather, a complaint must contain "enough facts to state a claim for relief that is *plausible on its face*." *Id*. at 570 (emphasis added).

5

The Court further explained this plausibility requirement in *Ashcroft v. Iqbal*, (556 U.S. 662 (2009)):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly* . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 677-78 (internal citations omitted). The level of factual detail needed to make a claim plausible varies with the complexity of the claim. *Id.* Under *Iqbal*, determining whether a complaint states a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010); *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1246 (10th Cir. 2008).

Prior to *Twombly* and *Iqbal*, the specific elements of a claim were not important: the focus was on whether the pleading gave fair notice of the claim asserted. *See* 2-8 Moore's Federal Practice - Civil § 8.04(1)(a) (2012). In *Swierkiewicz v. Sorema N.A.* (534 U.S. 506, 510-12 (2002)), the Supreme Court rejected the notion that courts should measure a pleading's accuracy by the elements of the claims asserted. This standard was called into question by the 2005 case *Dura Pharmaceuticals, Inc. v. Broudo* (544 U.S. 336 (2005) (Supreme Court held that a plaintiff must plead factual allegations of a specific element of securities fraud, namely that the defendant's fraud caused an economic loss).

6

However, "regardless of whether a pleading needs to provide *factual support* for every element of a claim in order to provide fair notice, . . . the analysis of whether a pleading states a 'plausible' claim . . . begins with an analysis of the elements of the claim." 2-8 Moore's Federal Practice - Civil § 2.08(1)(c) (emphasis added).

### 2. PROPER PARTY

According to Defendant, Plaintiff's entire Amended Complaint must be dismissed due to one fatal error: Plaintiff filed suit against the wrong party (Docket No. 27, p. 8 of 29). In its Second Motion for Judgment, Defendant claims that it did not have the power to terminate Plaintiff's employment; rather, Defendant's director could merely recommend Plaintiff's termination, the ultimate decision belonging to the BCC (Docket No. 27, p. 8 of 9). Defendant argues that the "board of county commissioners is the appointment authority for employees of a county department of job and family services. The commissioners hire and terminate, upon the recommendation of the director of the department, employees of the department of job and family services and fix[] compensation and benefits" (Docket No. 27, p. 9 of 29). Defendant is correct only in its description of the Commissioner's duties.

Under Ohio law, in every county, "there shall be a county department of job and family services." R.C. § 329.01. This department is charged with carrying out a variety of duties including, but not limited to, those assigned by the state, administering disability financial assistance and burials, determining individual eligibility for medical assistance for both adults and children, and establishing transportation procedures. R.C. § 329.04(A)(1)-(11). While tasked with these responsibilities, the department operates under the control and direction of the BCC. R.C. § 329.04(B).

With regard to employment, the BCC is responsible for appointing a county director of JFS.

R.C. § 329.01. This director, *with the approval of the BCC*, "shall appoint all necessary assistants and superintendents of institutions under the jurisdiction of the department, and all other employees of the department." R.C. § 329.02. Although the statute says nothing about who has the power to terminate employees, it stands to reason that if the BCC, upon the recommendation of the director, possesses the final approval to hire employees, it also possesses, upon the recommendation of the director, the final approval to terminate them as well.

Therefore, Defendant argues, Plaintiff's termination was only *recommended* by JFS; it was made official and final by the BCC (Docket No. 27, pp. 8-10 of 29). The BCC, then, is the proper defendant (Docket No. 27, pp. 8-10 of 29). After examining the statutory and case law, this Magistrate only partially agrees.

> Under Ohio case law, R.C. § 329.02
>
> give[s] the board of county commissioners and the welfare director reciprocal rights and responsibilities with relation to the appointment and removal of employees. Although the director has power to appoint, and thus to remove, employees, his authority is restricted in that it may be exercised only with the approval of the board. Likewise any implied authority that the board of county commissioners might have to appoint or remove would have to be carried out through the director under the provision that he shall have full charge of the county department of welfare under the control and direction of the board of county commissioners.

*Abbott v. Myers*, 20 Ohio App.2d 65, 71 (Ohio Ct. App. 1969). This suggests that neither JFS nor the BCC are independent authorities when it comes to human resource matters within the department.

Even more telling is the Supreme Court of Ohio's holding in *Wilson v. Stark Cnty. Dep't of Human Servs. et al.*, 70 Ohio St. 3d 450 (Ohio 1994). In *Wilson*, the plaintiff's sued not only the Stark and Seneca County Departments of Human Services but also the Stark and Seneca County Boards of County Commissioners for fraud, intentional or reckless infliction of emotional distress, and breach of contract. *Wilson*, 70 Ohio St. 3d at 450. All defendants moved for summary judgment, which the trial

8

court granted. *Id.* The Stark County Court of Appeals affirmed in part the trial court's ruling, but

reversed the judgment in favor of the departments of human services. *Id.* The plaintiff's appealed. *Id.*

On appeal, the Ohio Supreme Court held that

> [I]n an action against its department of human services, the county is a real party in interest. A claim against a county department of human services, then, is in effect a claim against the county itself. To allow such a claim arising from the performance of a governmental function would frustrate the purpose of the statute. The burdens imposed by litigation and damage awards ultimately fall upon the same county resources regardless of whether the nominal defendant is the county board of commissioners or the county department of human services.

*Id.* at 453 (internal citations omitted).

Based on both the statutes governing the BCC and JFS as well as the aforementioned case law,

this Magistrate finds that the BCC is indeed *a* proper party to Plaintiff's Complaint. However, that

being said, this Magistrate also finds that, much like the Ohio Supreme Court stated in *Wilson*, the

BCC is not the *only* proper party. In fact, under the authority of *Wilson*, it is irrelevant who Plaintiff

names in her suit: the result is the same whether the nominal defendant is the BCC or JFS.  Therefore,

Defendant's assignment of error, alleging that it cannot be held responsible for Plaintiff's termination

because Plaintiff was actually terminated by the BCC, a non-party, is without merit.

### 3.    Due Process Claim

Plaintiff claims a violation of due process, alleging Defendant failed to conduct an adequate

investigation into the charges against Plaintiff prior to terminating her and that such a practice is a

policy and/or custom of Defendant (Docket No. 19, p. 3 of 9). Defendant argues that such allegations,

even if true, are not sufficient to establish a § 1983 claim.

To determine whether a plaintiff's due process rights have been violated, a court must

undertake a two-step analysis. *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). First, a court

9

must determine whether a plaintiff has a property interest that entitles him to due process protection. *Id*. In cases of unlawful termination, this property interest has been identified as continued employment. *Gregory v. Hunt*, 24 F.3d 781, 784-85 (6th Cir. 1994) (*citing Bishop v. Wood*, 426 U.S. 341, 344 (1976)). Second, if the court determines that there *is* such an interest, it must determine what process is due. *Leary*, 228 F.3d at 742.

Plaintiff's First Amended Complaint fails to set forth any facts that, if true, would create a property interest in Plaintiff's continued employment with Defendant (Docket No. 19). Plaintiff makes no claim or allegation that she was anything but an at-will employee (Docket No. 19). "An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would only be for good cause." *Gregory*, 24 F.3d at 785 (*citing Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989)). Here, Plaintiff merely states that Defendant has denied her due process of law (Docket No. 19, p. 3 of 9). This statement is nothing more than a legal conclusion; under FED. R. CIV. P 12(c), this court "need not accept as true legal conclusions or unwarranted factual inferences." *Faurecia Exhaust*, 601 F.Supp.2d at 973. Therefore, Plaintiff's First Amended Complaint fails to properly allege a § 1983 claim against Defendant on this basis alone.

Furthermore, Plaintiff fails to set forth sufficient factual allegations showing that Defendant failed to provide Plaintiff adequate notice prior to her termination. The due process clause requires an employer, prior to termination, to provide a public employee: (1) oral or written notice of the charges against him; and (2) an explanation of the employer's evidence and an opportunity for the employee to present his side of the story. *See Buckner v. Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (*citing Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 310 (6th Cir. 1988)). Plaintiff does not allege that

10

Defendant failed to give her oral or written notice of the charges against her or an explanation of

Defendant's evidence against her (Docket No. 19). Neither does Plaintiff allege that Defendant denied

her the opportunity to present her side of the story (Docket No. 19). Without such basic information,

Plaintiff has failed to properly state a claim to relief that is plausible on its face. Therefore, Defendant

is entitled to judgment as a matter of law on Plaintiff's § 1983 due process claim and said claim is

dismissed.

### 4.        Equal Protection Claim: Reverse Discrimination

Plaintiff's First Amended Complaint asserts a claim of "reverse" racial discrimination under

Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and under O.R.C. § 4112.02(A) (Docket

No. 19). Defendant argues that Plaintiff failed to properly allege this claim and, as a result, the claim

should be dismissed (Docket No. 27, pp. 12-16 of 29).

To allege a prima facie case of Title VII discrimination in a *typical* case, a plaintiff must assert

that she: (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse

employment decision; and (4) was replaced by a person outside the protected class or was treated

differently than similarly situated non-protected employees. *Newman v. Fed. Express Corp.*, 266 F.3d

401, 406 (6th Cir. 2001). In a *reverse* discrimination case, where a member of a racial majority alleges

racial discrimination, the first and fourth prongs of the test are different. *Sutherland v. Michigan Dep't

of Treasury*, 344 F.3d 603 (6th Cir. 2003). Under the first prong, the plaintiff "must demonstrate

background circumstances to support the suspicion that the defendant is that unusual employer who

discriminates against the majority." *Id*. at 614 (*citing Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249,

255 (6th Cir. 2002)). To satisfy this prong, a plaintiff may present evidence of the defendant's

unlawful consideration of race in prior employment decisions (*Sutherland*, 344 F.3d at 615), evidence

that the person responsible for the employment decision was a minority (*Zambetti*, 314 F.3d at 257), or evidence of ongoing racial tension in the workplace (*Boger v. Wayne Cnty.*, 950 F.2d 316, 324-25 (6th Cir. 1991). To satisfy the fourth prong, the plaintiff "must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Sutherland*, 344 F.3d at 614.

According to Plaintiff, Defendant denied her equal protection "when it followed a custom and/or policy of inadequately investigating serious charges against Plaintiff before terminating her employment" (Docket No. 19, p. 4 of 9). She also alleges that "similarly situated employees of other races were treated more favorably . . . and were either disciplined in a less severe manner or were permitted to return to work" (Docket No. 19, p. 4 of 9). This claim is nothing more than a bare assertion of reverse racial discrimination: Plaintiff fails to elaborate or provide any examples of Defendant's "custom and/or policy" of reverse racial discrimination (Docket No. 19). Plaintiff even admits in her Opposition that any additional proof is not available to her at this pleading stage (Docket No. 31, p. 8 of 15). The question thus becomes *how*, then, does Plaintiff even know that Defendant has such a custom or policy? Motion pleading does not require solid evidence, such as what would be revealed during discovery, of a plaintiff's claim; however, a complaint will not suffice if it simply "tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 677-78 (internal citations omitted).

Without such basic information, Plaintiff has failed to properly state a claim to relief that is plausible on its face. Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's § 1983 equal protection claim and said claim is dismissed.

**5.    STATE LAW CLAIMS**

###### a.      POLITICAL SUBDIVISION IMMUNITY

According to Defendant, it is immune from liability for Plaintiff's state law claims of defamation and invasion of privacy under R.C. § 2744.02 (Docket No. 27, p. 16 of 29). Plaintiff disagrees (Docket No. 31, pp. 9-11 of 15).

Under R.C. §2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." There are five exceptions to this immunity: (1) negligent operation of a motor vehicle by an employee of the political subdivision when the employee is engaged within the scope of his employment and authority; (2) negligent performance of acts by employees of the political subdivision with respect to proprietary functions of the political subdivision; (3) negligent failure to keep public roads in repair and remove obstructions from public roads; (4) negligence of employees that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in conjunction with the performance of a governmental function; and (5) when civil liability is expressly imposed upon the political subdivision by another section of the Ohio Revised Code. R.C. §2744.02(B)(1)-(5).

According to Defendant, Plaintiff's failure to allege any of the statutory exceptions to the general rule of political subdivision immunity requires this Court to dismiss Plaintiff's claims for defamation and invasion of privacy (Docket No. 27, p. 18 of 29). This Magistrate does not agree. Section § 2744.02(A) applies to civil actions brought by *any* party, not just an employee of the political subdivision. R.C. § 2744.02(A)(1); *see also Buck v. Vill. of Reminderville*, 2010 Ohio 6497, *P13 (Ohio Ct. App. 2010), *aff'd*, 132 Ohio St.3d 24 (Ohio 2012) (in an action for defamation by the

13

chief of police against the municipality, the court found that, in actions for an intentional tort between employer and employee, it is R.C. § 2744.09(B) that applies). R.C. § 2744.09(B) states that Chapter 2744 does not apply to "civil actions *by an employee*, . . . against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision." Therefore, the question that must be answered to determine political subdivision immunity in this case is whether the intentional torts of defamation and invasion of privacy are matters that arise out of the employment relationship between the parties.

In *Blankenship et al. v. Cincinnati Milacron Chems., Inc., et al.*, 69 Ohio St.2d 608 (Ohio 1982), the Supreme Court of Ohio held "no reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment. Since an employer's intentional conduct does not arise out of employment, R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages." 69 Ohio St. 2d at 613. Although *Blankenship* dealt with intentional torts and employer immunity within the context of workers compensation under R.C. § 4123.74, the same logic has been applied to intentional torts and employer immunity under R.C. § 2744.09(B). In *Buck, supra*, the Court of Appeals of Ohio held:

> Section 2744.09(B) is designed to allow political subdivision employees to recover against their employers, who would otherwise be entitled to immunity under Chapter 2744 of the Ohio Revised Code. If intentional torts were not within the scope of Section 2744.09(B)'s immunity exclusion, it would be, as the Ohio Supreme Court explained in *Blankenship*, 'tantamount to encouraging such [intentionally tortious] conduct. *Blankenship v. Cincinnati Milacron Chems. Inc.*, 69 Ohio St. 2d 608, 614 (1982). 'Affording an employer immunity for his intentional behavior certainly would not promote [a safe work] environment, for an employer could commit intentional acts with impunity.' *Id.* at 615.

2010 Ohio at *P11.

14

This Court finds that political subdivision immunity does not apply to Defendant in this case and Defendant is not entitled to judgment as a matter of law for Plaintiff's state law claims on this basis alone. This Court must therefore determine whether Plaintiff has sufficiently pled, at least enough to withstand a Rule 12(c) motion, her state law claims of defamation and invasion of privacy under FED. R. CIV. P. 8(a).

### b.    DEFAMATION

In order to maintain an action for defamation, Ohio law requires a plaintiff to prove: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; . . . (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (Ohio Ct. App. 1996). There are two kinds of defamation: defamation *per se* and defamation *per quod*. *Id.* at 207. Defamation *per se* occurs when "material is defamatory on its face." *Id.* Defamation *per quod* occurs when "material is defamatory through interpretation or innuendo." *Id.*

Even if a plaintiff establishes a prima facie case of defamation, a defendant cannot be held liable if a privilege exists. *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (Ohio 1975). A "qualified" or "conditional" privilege is "recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further [that interest]." *Id.* at 244. Generally a statement is privileged when the publisher: (1) acts in good faith; (2) has an interest to uphold; (3) limits the statement in its scope to the purpose of upholding that interest; (4) makes the statement on a proper occasion; and (5) publishes the statement in a proper manner and only to proper parties. *Mosley v. Evans*, 90 Ohio App.3d 633, 636 (Ohio App. Ct. 1993) (*citing Hahn*, 43 Ohio St.2d at 246).

15

A plaintiff can overcome a privilege only by proving, with clear and convincing evidence, that the actionable language was motivated by actual malice. *Jacobs v. Frank*, 60 Ohio St.3d 111, 114 (Ohio 1991). Actual malice is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id*. at 116.

### 1.    DEFAMATORY STATEMENT

According to Plaintiff, Defendant falsely accused her of "dishonesty, failure of good behavior and malfeasance" (Docket No. 19, p. 4 of 9). Defendant then published these allegedly false accusations to its employees "who did not have a need to know" on or after March 29, 2011 (Docket No. 19, p. 5 of 9). Plaintiff also claims that the allegedly false accusations were intentionally published on the internet, in full view of the public (Docket No. 19, p. 5 of 9). In its Answer to Plaintiff's First Amended Complaint, Defendant attached a copy of the alleged defamatory statement, the BCC's approval of Plaintiff's termination, Resolution No. 11-320 (Docket No. 25, Attachment 1). The Resolution states: "in accordance with Article 14 of the collective bargaining agreement, [Plaintiff], Eligibility Specialist 2, is charged with dishonesty, failure of good behavior and malfeasance" (Docket No. 25, Attachment 1).

Whether or not the content of the allegations against Plaintiff are true or false is not the issue. In order to maintain a claim for defamation, a false statement must be communicated to a third party. Therefore, it is the communication between Defendant and the BCC and the public that is at issue. Plaintiff cannot deny that she was terminated for "dishonesty, failure of good behavior and malfeasance" (Docket No. 19, p. 4 of 9). It is generally well established that a communication made in good faith on a matter of common interest between an employer and an employee . . . is protected by qualified privilege." *Davis, et al. v. City of Cleveland, et al.*, 2004 Ohio 6621, *P43 (Ohio App. Ct.

16

2004). When Defendant's director communicated to the BCC her recommendation for Plaintiff's termination and the reasons behind it, the director was, in fact, communicating a true statement. For this reason alone, Defendant's Motion for Judgment on the Pleadings with regard to Plaintiff's defamation claim must be granted.

## 2.  PRIVILEGE

Even if the alleged defamatory statement were false, Defendant's Motion must still be granted because of the applicability of privilege. It has long been understood that the defense of qualified privilege applies "in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection." *Davis, et al. v. City of Cleveland, et al.*, 2004 Ohio 6621, *P44 (Ohio App. Ct. 2004). Therefore, "the privilege does not attach to the communication, but to the *occasion* on which it is made." *Id*. (emphasis added). Based on this definition, the occasion to which the privilege attaches is Defendant's relay of the grounds of Plaintiff's discharge to the BCC.

Under Ohio law, "a publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interest of society that he should tell [a] third person certain facts, which he in good faith proceeds to do." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 313 (6th Cir. 2000); (*quoting Miller v. Ohio Rehab. Servs. Comm'n*, 86 Ohio Misc.2d 97 (Ohio Ct. Cl. 1997). Here, Defendant had a duty to report Plaintiff's termination and the reasons for that termination in Resolution No. 11-320 to the BCC. *See* discussion *supra* Part C.2. In turn, the BCC had a duty to pass this resolution at a public meeting.

17

It is Plaintiff's duty, then, to overcome the privilege by proving, with clear and convincing evidence, that the actionable language was motivated by actual malice. *Jacobs*, 60 Ohio St.3d at 114. Plaintiff alleges that Defendant acted with "reckless and wanton disregard of the truth [or] falsity of the allegations" since Defendant failed to conduct an adequate investigation prior to her termination (Docket No. 19, p. 5 of 9). Furthermore, according to Plaintiff, Defendant was motivated by a "vendetta to procure her termination" (Docket No. 19, p. 5 of 9). Again, Plaintiff merely sets forth the legal conclusion that Defendant acted with "reckless and wanton disregard of the truth [or] falsity of the allegations" (Docket No. 19, p. 5 of 9). This Court is not required to accept as true legal conclusions. *Faurecia*, 601 F.Supp.2d at 973. Plaintiff has failed to plead any facts that, if true, would constitute *clear and convincing* evidence that actionable language was motivated by actual malice. Therefore, based on the pleadings, Plaintiff cannot defeat Defendant's claim of qualified privilege and Defendant is entitled to judgment as a matter of law with regard to Plaintiff's defamation claim.

### c.    INVASION OF PRIVACY

Under Ohio law, the tort of invasion of privacy consists of four distinct components: (1) intrusion into the plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light; and (4) appropriation of the plaintiff's name or likeness for the defendant's advantage. *Ghaster v. City of Rocky River*, 2010 U.S. Dist. LEXIS 71020, *25 (N.D. Ohio 2010) (*citing Housh v. Peth*, 165 Ohio St. 35, paragraph two of the syllabus (Ohio 1956)). From the pleadings, it appears Plaintiff alleges a claim of invasion of privacy under both the public disclosure and the false light components (Docket No. 19, p. 6 of 9).

### 1. PUBLICITY

18

In order for Plaintiff to state a claim under the "publicity" tort of invasion of privacy, she must allege that: (1) there was publicity, *i.e.* the disclosure must be of a public, not private, nature; (2) the facts disclosed concerned her private, not public, life; (3) the matter publicized is one that "would be highly offensive and objectionable to a reasonable person of ordinary sensibilities;" (4) the publication was made intentionally, not negligently; and (5) the matter was not of legitimate concern to the public. *Ghaster*, 2010 U.S. Dist. LEXIS at \*25. Publicity requires a communication to the "public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id*. at \*25-26.

It is clear from the facts pleaded that requirements one and four are satisfied. With regard to requirement two, Plaintiff is a public servant working for a local government body. Any facts disclosed about her employment deal with her public, not private life. Therefore, requirement two is not met. With regard to requirement three, Plaintiff alleges that disclosure of the reasons for her termination is offensive and objectionable to a reasonable person. Such a question is surely a matter for the finder of fact. However, the claim cannot even get that far. Plaintiff merely offers a "formulaic recitation" of one of the elements of invasion of privacy. Under *Iqbal*, this type of pleading is not enough to make the claim plausible on its face. 556 U.S. at 677-78.

The parties also disagree as to whether the matter was of legitimate concern to the public (Docket No. 27, p. 25 of 29; No. 31, p. 14 of 15). However, Plaintiff makes no mention as to whether the matter was or was not a matter of legitimate concern to the public in her First Amended Complaint (Docket No. 19). Therefore, based on the pleadings, it is clear that Plaintiff can prove no set of facts to support the "publicity" tort of invasion of privacy. As such, Defendant is entitled to a judgment as a matter of law on this claim.

### 2.    FALSE LIGHT

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability . . . if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St.3d 464, **P22-24 (Ohio 2007) (internal citations omitted). As with the claim of publicity invasion of privacy, nothing in Plaintiff's First Amended Complaint claims that the alleged false light in which Plaintiff was painted would be "highly offensive to a reasonable person" (Docket No. 19). It is clear that Plaintiff can prove no set of facts to support her state law claim of false light invasion of privacy. Therefore, Defendant is entitled to judgment as a matter of law with regard to this claim.

### VI.  CONCLUSION

Given that Plaintiff's pleadings fail to satisfy the plausibility standard required by FED. R. CIV. P. 8(a) and the standard set forth in *Twombly*, Defendant's Motion for Partial Judgment on the Pleadings under FED. R. CIV. P. 12(c) is granted.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   December 5, 2012