**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Dianne Ewing, | : | Case No. 3:12CV743 |
|     Plaintiff, | : | |
| vs. | : | |
| Lucas County Department of Job and Family Services, | : | **MEMORANDUM AND ORDER** |
| | : | |
|     Defendant. | : | |

## I. INTRODUCTION

The parties have consented to the undersigned Magistrate entering final judgment in this discrimination case filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., OHIO REV. CODE § 4112.02 and 42 U.S.C. § 1983.  Pending is Defendant's Motion for Summary Judgment (Docket No. 57), to which Plaintiff filed an Opposition (Docket No. 58), and Defendant filed a Reply (Docket No. 59).  For the reasons that follow, the undersigned Magistrate grants Defendant's Motion for Summary Judgment.

## II. FACTS

Plaintiff Diane Ewing ("Plaintiff"), is Caucasian, a citizen of the United States and resident of the City of Toledo, which is located in Lucas County, Ohio (Docket No. 19, p. 2 of 9). Defendant Lucas County Job and Family Services (hereinafter "Defendant" or "JFS") is a department within the governmental structure of Lucas County, Ohio, under the authority of the Lucas County Board of County Commissioners (Docket No. 19, p. 2 of 9).  Plaintiff was employed by Defendant as an Eligibility Specialist 2, prior to her discharge on or about April

1, 2011 (Docket No. 19, pp 2; 4 of 9). Defendant provides services to families in Lucas County, including temporary cash assistance, food stamps, subsidized child care, adult protection, disability assistance and prevention, retention and contingency services, and medical assistance (Docket No. 19, p. 2 of 9).

On January 2, 2011, Plaintiff was placed on administrative leave by Defendant after she filled out an Authorized Representative Designation form, a form 7200 for expedited food stamps and a statement concerning hours worked for her son, in violation of Defendant's Conflict of Interest, Confidentiality, and Authorized Representative policies (Docket No. 19, p. 3 of 9; Docket No. 58, pp. 2-3 of 9). On February 15, 2011, Plaintiff was charged with dishonesty, failure of good behavior and malfeasance by Defendant (Docket No. 57, p. 5 of 17; Docket No. 58, p. of 9). In accordance with the collective bargaining agreement, a pre-disciplinary meeting took place on February 25, 2011 (Docket No. 57, p. 6 of 17; Docket No. 58, p. 3 of 9). On March 10, 2011, Defendant's director recommended that Plaintiff's employment be terminated (Docket No. 57, Attachment 2, p. 57 of 71). On March 29, 2011, the Lucas County Board of County Commissioner's accepted the Director's recommendation and terminated Plaintiff's employment with JFS (Docket No. 57, Attachment 2, p. 56 of 71). A grievance was filed on behalf of Plaintiff by the employees' union, however, the Board of County Commissioners upheld her termination (Docket No. 57, Attachment 1, p. 2 of 3; Docket No. 58, p. 3 of 9). The employees' union could have opted for binding arbitration under the collective bargaining agreement, but chose not to do so in Plaintiff's case (Docket No. 58, p. 3 of 9).

### III. PROCEDURAL HISTORY

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission and Equal Opportunity Commission ("EEOC") on May 4, 2011 (Docket No. 19, Attachment 1). On March 13, 2012, the District Director of EEOC notified Plaintiff of her right to file suit in an appropriate federal district court within ninety (90) days (Docket No. 19, Attachment 2). On March 27, 2012, Plaintiff filed a Complaint in this United States

District Court asserting the following claims based upon her termination from employment with Defendant: violations of due process and equal protection pursuant to 42 U.S.C. § 1983, racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., state law claims of defamation and invasion of privacy, and racial discrimination pursuant to Ohio Rev. Code Ann § 4112.02 (A) and 4112.99 as amended. (Docket No. 1). On June 21, 2012, both parties consented to the jurisdiction of the undersigned Magistrate pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 (Docket No. 13). Defendant filed its Answer on July 3, 2012 (Docket No. 15). On July 6, 2012 Defendant filed a Motion for Judgment on the Pleadings (Docket No. 16).

On August 2, 2012, Plaintiff filed both an Opposition to Defendant's Motion for Judgment on the Pleadings and her First Amended Complaint (Docket Nos. 18 & 19). Defendant filed its Answer to the First Amended Complaint on September 22, 2012 (Docket No. 25). On September 24, 2012, Defendant filed its Second Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c), requesting dismissal of Plaintiff's First Amended Complaint (Docket No. 27). Plaintiff filed her Opposition to Defendant's motion on October 22, 2012 (Docket No. 31), and Defendant filed its Reply on November 12, 2012 (Docket No. 35). On December 5, 2012, this Court filed a Memorandum and Order granting Defendant's Motion for Judgment on the Pleadings and dismissing all of Plaintiff's state and federal claims (Docket No. 37). Plaintiff filed a Notice of Appeal from the Court's Memorandum and Order on January 2, 2013 (Docket No. 38).

On July 31, 2013, the Sixth Circuit Court of Appeals affirmed this Court's decision on all but one of Plaintiff's claims. The Court vacated the dismissal of Plaintiff's reverse discrimination claim, remanding it to this Court for further proceedings (Docket No. 42). On August 3, 2014, Defendant filed its Motion for Summary Judgment (Docket No. 57). Plaintiff filed an Opposition on September 2, 2014 (Docket No. 58), and Defendant filed its Response on September 10, 2014 (Docket No. 59).

### IV. STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by FED. R. CIV. P. 56 and the associated case law. *Miller v. Transfreight, LLC*, 2013 WL 4039033, at *1 (S.D. Ohio 2013). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving part is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c) (West 2014). Alternatively, summary judgment is denied "if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Miller*, 2013 WL 4039033, at *1 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

A fact is "material" if it might affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. A material fact is "genuine," if it is such "that a reasonable jury could return a verdict for the nonmoving party. *Id.* "[I]nferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *Nat. Satellite Sports, Inc. v. Eliadis, Inc.*, 65 F.Supp.2d 662, 664 (6th Cir. 1999)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party bears the burden of making a prima facie showing that there is an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The reviewing court must examine the record to determine whether the moving party, "in depositions, answers to interrogatories, admissions, affidavits and the like has demonstrated 'the absence of a genuine issue of material fact' . . . and his entitlement to judgment as a matter of law." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(quoting *Celotex*, 447 U.S. at 323)(citation omitted)).

If the moving party meets its burden then the burden shifts to the non-moving party to show, "by affidavits or as otherwise provided under Rule 56 . . . *that there is a genuine issue for trial*." *Banks*, 548 U.S. 529 (citation omitted)(emphasis in original). The nonmoving party must provide some evidence to demonstrate that there is a genuine issue for trial beyond the pleadings themselves. *Celotex*, 477 U.S. at 324. A non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007)(quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In evaluating a motion for summary judgment, the judge must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The Court must refrain from resolving conflicts in the evidence or making credibility determinations. *Id.* at 249. If the evidence is merely colorable . . . or it is not significantly probative . . . summary judgment may be granted. *Id.* at 249-250 (citations omitted).

## V. ANALYSIS

### A. "REVERSE" RACIAL DISCRIMINATION

Both Title VII of the Civil Rights Act and 42 U.S.C. § 1983 prohibit public employers from discriminatory employment practices. *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000). To make a claim under § 1983, a plaintiff must establish that she has been deprived of a right secured by the Constitution or laws of the United States by a person acting under the color of state law. 42 U.S.C. § 1983 (West 2014). "To establish an equal protection claim against a public employer under § 1983, the plaintiff must show that the employer made an adverse employment decision with discriminatory intent and purpose." *Weberg*, 229 F.3d at 522 (quoting *Boger v. Wayne Cnty.*, 950 F.2d 316, 324-25 (6th Cir. 2000)(internal quotations omitted)). Under

5

both Title VII and § 1983, a plaintiff is required to establish by a preponderance of the evidence that she "was the victim of intentional or purposeful discrimination." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). In other words, a plaintiff must show that "the adverse employment decision would not have been made 'but for' her race." *Weberg*, 229 F.3d at 522.

The Sixth Circuit "looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983." *Id.* A plaintiff can meet his/ her evidentiary burden "by introducing direct evidence of discrimination or by using the *McDonnell-Douglas* burden-shifting paradigm." *Singfield v. Akron Metro Housing Auth.*, 389 F.3d 555, 561 (6th Cir. 2004)(citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). "Ohio discrimination claims under R.C. § 4112.02 are analyzed under the same framework as Title VII claims." *Voltz v. Erie Cnty.*, 2014 WL 2599855, at *4 (N.D. Ohio 2014).

   1. **DIRECT EVIDENCE**

"Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Martinez v. Cracker Barrel Old Country Store, Inc*, 703 F.3d 911, 914 (6th Cir. 2013)(quoting *Thompson v. City of Lansing*, 410 Fed.Appx. 922, 929 (6th Cir. 2011)). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* at 914-915 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)).

In this case, the Plaintiff has failed to present any direct evidence that race played a role in the decision to terminate her employment. "Alternatively, the plaintiff can meet her evidentiary burden through indirect evidence under the *McDonnell Douglas* framework." *Weberg*, 229 F.3d at 523; *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973). "The direct evidence and circumstantial evidence paths are mutually exclusive; the plaintiff can meet her burden with either method of proof." *Id.* (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000)).

### 2. CIRCUMSTANTIAL EVIDENCE

Under the burden-shifting paradigm set forth in *McDonnell Douglas*, the initial burden of proof rests with the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In order to establish a prima facie case for discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) was subjected to an adverse employment action; (3) is qualified for the position from which she was fired; and (4) was treated differently than employees outside of the protected class for the same or similar conduct. *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 561 (6th Cir. 2004)(citing *Talley v. Bravo Pitino Rest., L.T.D.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

In reverse discrimination cases in which a member of the majority is alleging discrimination on the basis of race, the Sixth Circuit has modified the first and fourth prong of the prima facie case. *Sutherland v. Mich. Dept. Of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). "[T]o satisfy the first prong . . . the plaintiff must demonstrate background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)(internal quotations omitted)). To meet the fourth prong of the prima facie case for reverse discrimination "the plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Id.*

"Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue." *Sutherland v. Mich. Dept. Of Treasury*,

344 F.3d 603, 614-15 (6th Cir. 2003)(citing *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804 (internal quotation marks omitted)). Courts have recognized the shifting burden creates a rebuttable presumption against the employer that it unlawfully discriminated against the plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)(citing *Burdine*, 450 U.S. at 254). If, however, the defendant rebuts the presumption, then the burden shifts once again to the plaintiff, who must be given an opportunity to show, by a preponderance of the evidence, that the rationale offered by defendant was not its true reason, but instead a pretext for discrimination. *Id.* "To survive summary judgment, a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Shazor v. Professional Transit Management, Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014)(quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012)).

      a.      **WHETHER PLAINTIFF ESTABLISHED HER PRIMA FACIE CASE FOR REVERSE DISCRIMINATION**

Viewing the facts in a light most favorable to the non-moving Plaintiff, as this Court is required to do in evaluating motions for summary judgment, Plaintiff has failed to establish her prima facie case for reverse discrimination under either the first or fourth prongs. The Sixth Circuit's modified first prong requires a plaintiff to show background circumstances to support the suspicion that the defendant is the unusual employer that discriminates against the majority. *See Zambetti*, 314 F.3d at 256. A plaintiff may meet this burden by presenting evidence that defendant has unlawfully considered race as a factor in past employment matters, which would warrant a suspicion of "capricious discrimination" on account of race. *Id.* (citing *Jamison v. Storer*, 1987 WL 44901, at *3 (6th Cir. 1987)(unpublished)). The Sixth Circuit has found, for example, that the fact that an adverse employment decision was made by a member of a racial minority was sufficient to meet the first prong of the prima facie case for reverse discrimination. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)(citing *Zambetti*, 314 F.3d at 257). In this case, however, Plaintiff has failed to make any

8

such showing or to otherwise present evidence of background circumstances supporting a suspicion that Defendant discriminates against the majority.

Plaintiff has also failed to put forward evidence that she was treated differently than a similarly situated employee of a different race. At prong four, "the plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Sutherland*, 344 F.3d at 614. In *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992), the Sixth Circuit held that "to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. (emphasis added). Since *Mitchell*, the Sixth Circuit has clarified and relaxed the "similarly-situated" requirement holding that "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situation,' rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all relevant aspects.'" *Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 412 (6th Cir. 2008)(quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)(citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Plaintiff alleges that Defendant's decision to terminate her employment was on the basis of her race and argues that other similarly situated JFS employees of a different race were subjected to more favorable levels of discipline and were permitted to return to work (Docket No. 19, pp. 6-7 of 9; Docket No. 58, pp. 7-8 of 9). According to JFS Director Brian Cunningham, only the charges specifically listed in the collective bargaining agreement between the County and employees union could be utilized in disciplinary actions (Docket No. 57, Attachment 1, p. 3 of 3). Mr. Cunningham also indicated that the list of charges set forth in the collective

9

bargaining agreement are not defined and that the severity of the discipline imposed by the County on an offending employee is not based upon the designation of the charges themselves, but rather the specific circumstances underlying those charges (Docket No. 57, Attachment 1, p. 3 of 3).

Plaintiff contends that JFS employees Markus Stewart, Malaika Bell, Ameer Abdul-Malik, Amy Hancock, Robert Gutierrez, Renee Thomas, Stephanie English, Roberta Gordon, and Jennifer Hill, all of whom are either African American or Latino, were similarly situated and more favorably treated than herself (Docket No. 58, pp. 7-8 of 9). The table included below contains a summary of each employee's conduct, charges, and discipline:

| JFS Employee & Title | Charges | Conduct | Punishment |
|---|---|---|---|
| Plaintiff, Eligibility Specialist 2 | Dishonesty, Failure of Good Behavior, and Malfeasance (Docket No. 57, Attachment 2, p. 56 of 71). | Filled out an Authorized Representative Designation form for her son's application for expedited food stamps and wrote a statement concerning her son's work schedule in violation of agency policy (Docket No. 57, Attachment 3, pp. 37-38 of 58). | Termination (Docket No. 57, Attachment 2, p. 56 of 71). |
| Markus Stewart, Casework Aide | Dishonesty, Neglect of Duty, Failure of Good Behavior and Malfeasance (Docket No. 57, Attachment 2, p. 50 of 71). | Excessive absenteeism and falsifying a leave slip (Docket No. 57, Attachment 1, p. 2 of 3). | Thirty (30) day suspension served in-house (Docket No. 57, Attachment 2, p. 50 of 71). |
| Malaika Bell, Eligibility Specialist | Insubordination, Neglect of Duty, Failure of Good Behavior and Malfeasance (Docket No. 57, Attachment 2, p. 55 of 71). | No specific details in the record | Three day suspension without pay (Docket No. 57, Attachment 2, p. 55 of 71). |

| | | | |
|---|---|---|---|
| Ameer Abdul-Malik, Adult Protection Worker | Failure of Good Behavior (Docket No. 57, Attachment 2, p. 49 of 71). | Yelling at his supervisor, excessive absenteeism and failing to report absences (Docket No. 57, Attachment 1, p. 2 of 3). | Three (3) day suspension served in-house (Docket No. 57, Attachment 2, p. 49 of 71). |
| Amy Hancock, Casework Aide | Neglect of Duty and Dishonesty (Docket No. 57, Attachment 2, p. 51 of 71). | Excessive absenteeism and falsifying a leave slip (Docket No. 57, Attachment 1, p. 2 of 3). | Thirty (30) day suspension served in-house (Docket No. 57, Attachment 2, p. 51 of 71). |
| Robert Gutierrez, Layout Design Artist | Dishonesty, Neglect of Duty, and Failure of Good Behavior (Docket No. 57, Attachment 2, p. 52 of 71). | Excessive absenteeism and falsifying a leave slip (Docket No. 57, Attachment 1, pp. 2-3 of 3). | Fifteen (15) day suspension served in-house with pay (Docket No. 57, Attachment 2, p. 52 of 71). |
| Renee Thomas, Eligibility Specialist 2 | Failure of Good Behavior and Failure to Follow Policy (Docket No. 57, Attachment 2, p. 53 of 71). | Physical altercation with another employee and failing to report it (Docket No. 57, Attachment 1, p. 3 of 3) | Thirty (30) day suspension, fifteen (15) days to be served in-house and fifteen (15) days without pay (Docket No. 57, Attachment 2, p. 53 of 71). |
| Stephanie English, Eligibility Specialist 2 | Failure of Good Behavior and Violation of Policy (Docket No. 57, Attachment 2, p. 54 of 71) | Physical altercation with another employee and failing to report it (Docket No. 57, Attachment 1, p. 3 of 3) | Fifteen (15) day suspension (eight (8) days to be served in-house and seven (7) days to be served without pay (Docket No. 57, Attachment 2, p. 54 of 71). |

| Roberta Gordon, Application Registration Aide | Dishonesty, Failure of Good Behavior, Neglect of Duty and Malfeasance (Docket No. 57, Attachment 3, p. 51 of 58). | Scanned a verification of address stating the address provided by her son was for mailing purposes only. Document was created and signed by Ms. Gordon and scanned into her son's case via OnBase (Docket No. 57, Attachment 3, p. 52 of 58). | Terminated (Docket No. 57, Attachment 3, p. 51 of 58). |
|---|---|---|---|
| Jennifer Hill, Knowledgeability Specialist | Not Provided | Represented a significant other in a hearing concerning the denial of his benefits (Docket No. 57, Attachment 3, pp. 28-29 of 58). | Terminated before receiving a six-month suspension (Docket No. 57, Attachment 3, pp. 28-29 of 58). |

After reviewing the charges for these employees, the undersigned Magistrate finds that Plaintiff focuses too narrowly on the designation of the charges and in doing so ignores the facts giving rise to the disciplinary action. For example, the record reflects that Mr. Stewart was charged with dishonesty, neglect of duty, failure of good behavior and malfeasance, three of which are the same charges which were also levied against Plaintiff, however, both Mr. Cunningham's affidavit and JFS Executive Director Deb Flores' deposition testimony reflect that the circumstances under which Mr. Stewart was disciplined were related to attendance (Docket No. 57, Attachment 1, p. 2 of 3; Docket No. 57, Attachment 2, 16-17 of 71). "In determining whether an allegedly comparable employee is similarly situated to the Plaintiff, the question is whether 'all of the relevant aspects of his employment situation were 'nearly identical' to those of [the African American or Latino employee's] employment." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999)(quoting *Ercegovich*, 154 F.3d at 352 (citation omitted)). The undersigned Magistrate finds the relevant aspects for comparison in this case are not merely the designated charges by themselves, but also the underlying

conduct giving rise to the disciplinary action.

The record in this case reflects that four JFS employees, including Plaintiff, were similarly situated based on their involvement in family member's cases with the agency: (1) Plaintiff, (2) Julie Gale Jagodzinski, (3) Roberta Gordon, and (4) Rosetta Peoples.[1]  Two of these employees, Plaintiff and Ms. Jagodzinski are both Caucasian and Ms. Gordon and Ms. People are both African Americans.  The table below is a summary of their charges:

| JFS Employee & Title | Charges | Conduct | Punishment |
|---|---|---|---|
| Plaintiff, Eligibility Specialist 2 | Dishonesty, Failure of Good Behavior, and Malfeasance (Docket No. 57, Attachment 2, p. 56 of 71). | Filled out an Authorized Representative Designation form for her son's application for expedited food stamps and wrote a statement concerning her son's work schedule in violation of agency policy (Docket No. 57, Attachment 3, pp. 37-38 of 58). | Termination (Docket No. 57, Attachment 2, p. 56 of 71). |
| Rosetta Peoples, Eligibility Specialist 2 | Dishonesty, Failure of Good Behavior, Neglect of Duty and Malfeasance (Docket No. 57, Attachment 1, p. 1 of 3). | Wrote and signed a false "rent statement" on behalf of her niece (Docket No. 57, Attachment 1, p. 1 of 3). | Terminated (Docket No. 57, Attachment 1, p. 1 of 3). |
| Julie Gale Jagodzinski, HR Administrative Secretary | Not provided | Accessed agency case information regarding family members and her former spouse in violation of agency policy (Docket No. 57, Attachment 1, p. 2 of 3). | Terminated, however after filing an appeal she was allowed to resign (Docket No. 57, Attachment 1, p. 2 of 3). |

---

[1] Although JFS employee Lori Klein's charges were similar, her conduct did not involve case conflicts with family members.

| Roberta Gordon, Application Registration Aide | Dishonesty, Failure of Good Behavior, Neglect of Duty and Malfeasance (Docket No. 57, Attachment 3, p. 51 of 58). | Scanned a verification of address stating the address provided by her son was for mailing purposes only. Document was created and signed by Ms. Gordon and scanned into her son's case via OnBase (Docket No. 57, Attachment 3, p. 52 of 58). | Terminated (Docket No. 57, Attachment 3, p. 51 of 58). |

The table reflects that Plaintiff, Ms. Peoples, and Ms. Gordon were all charged with dishonesty, failure of good behavior, and malfeasance, although Ms. Peoples and Ms. Gordon also faced another charge of neglect of duty (Docket No. 57, Attachment 1, pp. 1-2 of 3).[2] In each case, JFS' recommendation to the Lucas County Board of County Commissioners was that the employees be terminated (Docket No. 57, Attachment 1, pp. 1-2 of 3). The record indicates that the Board of County Commissioners terminated all but Ms. Jagodzinski, who was permitted to resign upon filing an appeal (Docket No. 57, Attachment 1, p. 2 of 3).

Nevertheless, Plaintiff contends that Ms. Gordon received more favorable treatment than she did, comparing her previously clean disciplinary record to that of Ms. Gordon's and noting that Ms. Gordon was not terminated until after her fifth infraction (Docket No. 58, p. 8 of 9). While the undersigned Magistrate recognizes that in appropriate instances, two similarly situated employees' past disciplinary history could be relevant, such is not the case here. There is no evidence that Ms. Gordon was ever previously charged with the same or similar conduct and given a more favorable punishment. Moreover, the summary of events detailed in Ms. Gordon's grievance documentation contain mitigating circumstances in two prior incidents, which are not present in this case, making them distinguishable from the charges of misconduct for which both Ms. Gordon

---

[2] The record does not contain the specific charges assessed Ms. Jagodzinski.

14

and Plaintiff were terminated in this case (Docket No. 57, Attachment 3, pp. 51-52 of 58). Thus, Plaintiff has failed to establish the facts that similarly situated employees of a different race were treated more favorably than she was as required under the fourth prong.

Since Plaintiff has failed to make the requisite showing to establish her prima facie case under either the first or forth prongs, Defendant is entitled to summary judgment as a matter of law. Therefore, the undersigned Magistrate grants Defendant's Motion for Summary Judgment on Plaintiff's reverse discrimination claims.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: October 20, 2014